BANKERS COMMERCIAL CORPORATION, PETITIONER, *v.* COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7145. Promulgated October 4, 1927.

The petitioner and Commercial Security Company, Inc., were not
affiliated during the taxable period.

*Robert C. Cooley, Esq.*, for the petitioner.
*P. J. Rose, Esq.*, for the respondent.

The respondent has asserted a deficiency in income tax and excess
and war-profits tax against the petitioner for the period January 1,
1918, to April 30, 1918, inclusive, in an amount in excess of $10,000.
In March, 1924, the respondent imposed an assessment against the
petitioner in the sum of $50,274.44, and the deficiency notice giving
rise to this proceeding determines a further tax liability, in addi-
tion to the aforementioned assessment, in the amount of $3,338.66.
According to the petitioner's brief, the actual amount in dispute is
a sum, exclusive of interest, amounting to more than $38,000. This
deficiency results from the denial by the respondent of the petition-
er's claim that it was affiliated with the Commercial Security Co.,
Inc., during the period above specified.

FINDINGS OF FACT.

The Bankers Commercial Corporation was organized under the
laws of the State of New York. It was engaged in the business of
handling automobile and installment paper. Its office during the
period in question was at 14 Wall Street, New York City. It was
one of two predecessor banking corporations, later merged under the
laws of the State of New York under the name of Bankers Com-
mercial Security Co., Inc., which merged organization is located at
270 Madison Avenue, New York City. It is agreed by the parties
litigant that the legal merger of these two constituent companies
occurred, for the purposes of this proceeding, on May 1, 1918. The
deficiency notice herein involved was issued on that basis. The legal
and accounting work in connection with effectuating this merger
began in the fall of 1917 and continued constantly until May, 1918.

The Commercial Security Co., the other predecessor corporation
above mentioned, was originally incorporated under the laws of the
State of Illinois in 1907. Its capital in the beginning consisted of
$80,000 of so-called piano paper and was supplied by one George G.
Foster. This paper was deposited with the Central Trust Co., for
which gold bonds were issued to the Commercial Security Co., and

the latter in turn offered them to various banks. R. A. Crandall was the operating head of the Commercial Security Co. He developed a market for these securities, principally in the banks throughout the middle west. He had very strong New York financial connections. The Commercial Security Co. moved to New York in the latter half of 1917 and at that time there were approximately 500 banks throughout the country buying securities of the company. The Commercial Security Co. was reincorporated under the New York laws. At the time of its removal it enjoyed credit facilities largely in excess of its needs. The volume of business the company was handling per year at that time and about January 1, 1918, was running between three and one-half and four million dollars a year.

The officers of the Commercial Security Co. during the period in question were: R. A. Crandall, president; George G. Foster, vice president; Wm. L. White and R. A. Crandall, each treasurer during a part of the period; Wm. L. White, secretary during all the period except the first few weeks in January, 1918.

The officers of the Bankers Commercial Corporation during this period were: George G. Foster, president; Don C. McCord, vice president; J. A. Bower, secretary; and R. A. Crandall, treasurer.

Wm. L. White was counsel of both companies during, prior to, and subsequent to the period in question.

The directors of the Commercial Security Co. during this period were: George G. Foster, R. A. Crandall, Frederick W. Zoller, George L. Eaton, and J. H. Shale.

The directors of the Bankers Commercial Corporation during this period were: George G. Foster, R. A. Crandall, George L. Eaton, Joseph A. Bower, E. C. Converse, A. L. Scheuer and Wm. T. Graham.

About January 1, 1918, George G. Foster had endorsed over a million dollars worth of the obligations of the Bankers Commercial Corporation. This fact was known to the principal stockholders of the company. The Bankers Commercial Corporation had already reached its limit of credit with the banks and it was necessary to give a bank additional security before the latter would increase its loan to the company. It would make its own promissory note in favor of the bank involved in each such transaction and Foster would endorse the note personally. This was necessary in order that the company might get and handle business that was being offered it at that time.

Beginning several months prior to January 1, 1918, and continuing throughout the period January 1 to May 1, 1918, the Bankers Commercial Corporation received automobile and installment paper with collateral in the regular course of business, in excess of the amount that it was able to finance. On account of the better financial ar-

rangements and the better credit enjoyed by the Commercial Security Co., such excess paper was sent to the office of the Commercial Security Co. and purchased by it as though it was business that had come to it in the regular way. There was no credit or profit to the Bankers Commercial Corporation on this account.

During the taxable period involved, the Commercial Security Co. advanced money to the Bankers Commercial Corporation to enable the latter to buy paper that otherwise it would have been unable to purchase. On January 1, 1918, the business of the Bankers Commercial Corporation was running about one million dollars a month. It maintained throughout January to April, 1918, inclusive, the same volume of its own business. It was not possible for the Bankers Commercial Corporation, with its own resources and credit, to handle that volume of business. It was compelled to turn over to the Commercial Security Co. several hundred thousand dollars worth of business per month.

J. H. Shale was a vice president of both companies during this period and while he spent most of his time at the office of the Bankers Commercial Corporation, he was at the office of the Commercial Security Co. assisting in its affairs several times a week. William L. White in his capacity as counsel for the two companies, and after his election as secretary of the Commercial Security Co. in January, 1918, spent a quarter of his time at the office of the Bankers Commercial Corporation, assisting it in operating problems. Throughout the period in question it was the practice of.the two companies to supply printed notes and installment contracts to dealers and manufacturers in blank, to be filled out by the latter upon the sale of motor vehicles or pianos, according to the terms of the sale, and said form notes and contracts were printed with the names of both companies upon them so that upon their receipt one name could be crossed off and one company or the other would purchase the paper as might be most convenient at that time.

The office of George G. Foster during the period in question was located at 14 Wall Street in the office of the Bankers Corporation. He gave constant attention to the affairs of the two companies. The offices of the two companies were in daily communication either personally or by telephone. The office of the Commercial Security Co. was located at Fifth Avenue and 42nd Street.

During the period in question each company held regular meetings. The meetings of the Commercial Security Co. were merely routine affairs, and the minutes do not show discussion of any matters outside of the routine required by law. The commercial affairs of the two companies during this period were practically directed by George G. Foster and R. A. Crandall, jointly. Wm. L. White became secretary of the merged companies in May, 1918. Each company kept

its own books throughout the period. A dividend was paid to the stockholders of the Commercial Security Co. at the end of the first quarter according to the stockholders of record. A dividend was paid to the stockholders of the Bankers Commercial Corporation at the end of the first quarter, according to the stockholders of record. The true stock ownership of each company during this period was:

| Name | Bankers Commercial Corporation | | Commercial Security Co. | |
|---|---|---|---|---|
| | Shares | Per cent | Shares | Per cent |
| Thomas Cochran | 1,000 | 10 | 500 | 5 |
| E. C. Converse | 500 | 5 | 50 | .5 |
| R. A. Crandall | 700 | 7 | 2,065 | 20.65 |
| Wm. S. Cochrane | 150 | 1.5 | 80 | .8 |
| George L. Eaton | 350 | 3.5 | 385 | 3.85 |
| George G. Foster | 3,080 | 30.8 | 6,010 | 60.1 |
| Harvey D. Gibson | 200 | 2 | 50 | .5 |
| Lee Richmond | 100 | 1 | 348 | 3.48 |
| J. H. Shale | 230 | 2.3 | 355 | 3.55 |
| A. G. Wigren | 100 | 1 | 10 | .1 |
| F. W. Zoller | 250 | 2.5 | 10 | .1 |
| J. Fletcher Farrell | | | 40 | .4 |
| Louis E. Loflin | | | 48 | .48 |
| William A. Tilden | | | 39 | .39 |
| Jessie C. Wallis | | | 10 | .10 |
| W. B. Armstrong | 350 | 3.5 | | |
| A. B. Ashforth | 20 | .2 | | |
| J. A. Bower | 250 | 2.5 | | |
| George B. Case | 500 | 5 | | |
| Franklin Escher | 200 | 2 | | |
| William T. Graham | 750 | 7.5 | | |
| T. C. Hovey | 100 | 1 | | |
| A. M. Hall, 2nd | 100 | 1 | | |
| Philip H. McMillan | 200 | 2 | | |
| Don C. McCord | 100 | 1 | | |
| T. J. O'Connell | 10 | .1 | | |
| L. S. Stillman | 100 | 1 | | |
| A. L. Scheuer | 500 | 5 | | |
| William R. Stephenson | 50 | .5 | | |
| George V. Shaw | 10 | .1 | | |
| James R. Trowbridge | 100 | 1 | | |
| | 10,000 | 100.00 | 10,000 | 100.00 |

Wm. L. White was intimately acquainted with the affairs of both companies. White did not know of any right or power by which anyone other than stockholders of record in either corporation could exercise any dominion over any other person's stock in either corporation. All of the stockholders of the Bankers Commercial Corporation, with negligible exceptions, were close business associates or personal friends of George G. Foster or of R. A. Crandall.

OPINION.

LANSDON: After a careful study of the evidence and comparison with similar cases previously decided, we are of the opinion that the petitioner and the Commercial Security Co. Inc., were not affiliated during the taxable period.

Reviewed by the Board.

*Judgment will be entered on 10 days' notice, under Rule 50.*